**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRANDON SMIETANA, SKYCOIN GLOBAL FOUNDATION LIMITED, a Singapore company, and SYMBOLIC ANALYTICS INC., a Delaware corporation, | |
| Plaintiffs, | Civil Action No. 24-cv-08617 |
| v. | Judge: Honorable Hon. John Robert Blakey |
| BRADFORD STEPHENS, AARON KUNSTMAN, JOEL WAYNE CUTHRIELL, MORGEN PECK, CATHERINE BYERLY, ADVANCE MAGAZINE PUBLISHERS INC. d/b/a THE NEW YORKER, and UNKNOWN INDIVIDUALS and COMPANIES, | Magistrate Judge: Hon. Keri L. Holleb Hotaling |
| Defendants. | |

**DEFENDANT ADVANCE MAGAZINE PUBLISHERS INC. D/B/A THE NEW YORKER'S OPPOSED MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR IMPROPER VENUE PURSUANT TO FED. R. CIV. P. 12(b)(3) & 28 U.S.C. § 1406(a), OR IN THE ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

I.    PRELMINARY STATEMENT ........................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................ 2

    A.   The Parties ............................................................................................. 2

    B.   The Article ............................................................................................. 3

    C.   The Lawsuit ........................................................................................... 3

III.  ARGUMENT ................................................................................................... 4

    A.   THE NORTHERN DISTRICT OF ILLINOIS IS NOT A PROPER VENUE ....... 4

    B.   IN THE ALTERNATIVE, TRANSFER TO THE SOUTHERN DISTRICT OF
        NEW YORK IS WARRANTED. ............................................................. 8

        1.   New York Is More Convenient for the Parties and Witnesses ................... 9

    a.   Plaintiffs' Choice of Forum Should Be Discounted ............................... 9

    b.   Plaintiffs Have Not Pleaded that Illinois is the Situs of Material Events ............ 10

    c.   Proof Can Be Easily Accessed in New York ........................................ 11

    d.   New York Is More Convenient for *The New Yorker*'s Witnesses ........................ 11

    e.   Litigating in New York is More Convenient for Most of the Parties ................... 12

        2.   Transfer to New York Would Serve the Interests of Justice ................... 12

IV.   CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aliano v. Quaker Oats Co.*,
No. 16 C 3087, 2017 WL 56638 (N.D. Ill. Jan. 4, 2017) ......................................11

*Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*,
80 F. Supp. 3d 870 (N.D. Ill. 2015) ......................................................................5

*Am. Booksellers Ass'n v. Houghton Mifflin Co.*,
No. CIV.A. 94-3311, 1994 WL 570172 (E.D. Pa. Oct. 18, 1994)..........................15

*Amorose v .C.H. Robinson Worldwide, Inc.*,
521 F. Supp. 2d 731, 737 (N.D. Ill. 2007) ...........................................................11

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
571 U.S. 49 (2013)..............................................................................................4, 8

*Auto-Owners Ins. Co. v. Websolv Computing, Inc.*,
580 F.3d 543 (7th Cir. 2009) ................................................................................14

*Bd. of Forensic Doc. Exam'rs, Inc. v. Am. Bar Ass'n*,
922 F.3d 827 (7th Cir. 2019) ................................................................................14

*Biomet, Inc. v. Stryker Howmedica Osteonics Corp.*,
No. 03 C 6491, 2004 WL 769358 (N.D. Ill. Apr. 9, 2004).....................................10

*Carrington v. Israel Emergency Alliance*,
No. 21 C 3713, 2022 WL 1062337 (N.D. Ill. Apr. 8, 2022)..................................6, 7

*Clark v. McDonald's Corp.*,
No. 3:22-CV-00628-NJR, 2023 WL 2648467 (S.D. Ill. Mar. 27, 2023)..................6

*Davis v. Costa-Gavras*,
580 F. Supp. 1082 (S.D.N.Y. 1984)......................................................................15

*Faraj v. Duvick*,
No. 1:20-cv-4488, 2021 WL 1315631 (N.D. Ill. Apr. 8, 2021)..............................12

*Faxel v. Wilderness Hotel & Resort, Inc.*,
No. 19 C 4649, 2019 WL 6467317 (N.D. Ill. Dec. 2, 2019) ..................................11

*Ford-Reyes v. Progressive Funeral Home*,
418 F. Supp. 3d 286 (N.D. Ill. 2019) ...................................................................5, 6

*Gencor Pac., Inc. v. Fed. Lab'ys Corp.*,
No. 07 C 168, 2007 WL 2298367 (N.D. Ill. Aug. 3, 2007) ....................................................7

*Illinois Computer Rsch., LLC v. Harpercollins Publishers, Inc.*,
No. 10 C 5021, 2010 WL 4877501 (N.D. Ill. Nov. 22, 2010) ..............................................13

*Jaramillo v. DinEquity Inc.*,
664 F. Supp. 2d 908 (N.D. Ill. 2009) .............................................................................9, 11

*Jasper v. Danone N. Am. Pub. Benefit Corp.*,
No. 22 C 7122, 2023 WL 4492354 (N.D. Ill. July 12, 2023) ..................................................9

*Jaurequi v. John Deere Co.*,
986 F.2d 170 (7th Cir. 1993) ...............................................................................................14

*Joint Ukrainian-Spanish Venture Inus v. United Indus. Int'l, Inc.*,
No. 94 C 693, 1994 WL 571662 (N.D. Ill. Oct. 14, 1994) ....................................................9

*Kapoor v. Nat'l Rifle Ass'n of Am.*,
343 F. Supp. 3d 745 (N.D. Ill. 2018) ...................................................................................13

*Khan v. Hemosphere, Inc.*,
No. 18 C 05368, 2019 WL 10947304 (N.D. Ill. Jan. 23, 2019) .........................................7, 8

*Kjaer Weis v. Kimsaprincess Inc.*,
296 F. Supp. 3d 926 (N.D. Ill. 2017) .....................................................................................9

*Kulla v. Mayorkas*,
No. 24-CV-03847, 2024 WL 4188017 (N.D. Ill. Sept. 13, 2024) ..........................................5

*Montgomery v. Risen*,
No. 15-20782-CIV, 2016 WL 4119865 (S.D. Fla. Jan. 26, 2016) ........................................15

*Nunes v. Cable News Network, Inc.*,
No. 8:22-CV-2659-SCB-AEP, 2023 WL 2468646 (M.D. Fla. Mar. 1, 2023), *appeal dismissed*, No. 23-11038-D, 2023 WL 4248936 (11th Cir. May 22, 2023) ............................7

*Powell v. Sparrow Hosp.*,
No. 09 C 3239, 2010 WL 582667 (N.D. Ill. Feb. 12, 2010) ...........................................10, 15

*Qualtex Corp. v. ATM Grp. Corp.*,
No. 13 C 08914, 2014 WL 3495602 (N.D. Ill. July 14, 2014) ...............................................8

*Research Automation, Inc. v. Schrader-Bridgeport, Int'l, Inc.*,
626 F.3d 973 (7th Cir. 2010) ...............................................................................................13

*Santa's Best Craft, LLC v. Janning.*,
2003 WL 21504522 (N.D. Ill. June 30, 2003) ................................................................10, 15

*Shapiro v. Schiller*,
No. 02-1275 RLP.LFG, 2003 WL 24885791, at *2 (D.N.M. Mar. 3, 2003)............................7

*Shepherd v. Am. Numismatic Ass'n*,
No. 13 C 8, 2013 WL 5798963 (N.D. Ill. Oct. 28, 2013) ......................................9, 13

*Smietana v. Stephens*,
No. 22 C 708, 2023 WL 3737720 (N.D. Ill. May 30, 2023) ......................................3

*Smietana v. Stephens*,
No. 22 C 708, 2024 WL 965178 (N.D. Ill. Mar. 5, 2024) ................................2, 3, 4

*Sterling Novelty, Inc. v. Smith*,
700 F. Supp. 408 (N.D. Ill. 1988) ..............................................................15

*Tolbert v. Nationstar L.L.C.*,
No. 24-CV-9, 2024 WL 4253330 (S.D. Ill. Sept. 20, 2024)....................................5

*Underground Sols., Inc. v. Palermo*,
41 F. Supp. 3d 720 (N.D. Ill. 2014) .......................................................14, 15

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ...........................................................................14

*Villalobos v. Iowa Chi. & E. R.R. Corp.*,
No. 09 C 2342, 2009 WL 10713600 (N.D. Ill. Aug. 3, 2009) ................................12

*Williams v. State Farm Mut. Auto. Ins. Co.*,
No. 22 C 1422, 2023 WL 4106067 (N.D. Ill. June 21, 2023) .................................9

*Yi v. Uber Techs., Inc.*,
No. 18 C 355, 2018 WL 5013568 (N.D. Ill. Oct. 15, 2018) ..................................11

**State Cases**

*Zeitlin v. Cohan*,
197 N.Y.S.3d 211 (2023), *leave to appeal denied*, 42 N.Y.3d 905 (2024) .............................14

**Federal Statutes**

18 U.S.C. § 1836(b) ..........................................................................3, 4

18 U.S.C. § 1961 (RICO)......................................................................3, 4

28 U.S.C. § 1391 ................................................................................4

28 U.S.C. § 1391(b) .............................................................................4

28 U.S.C. § 1391(b)(2) .......................................................................5, 6

28 U.S.C. § 1391(b)(3) ............................................................................................................5

28 U.S.C. § 1404(a) ................................................................................................... *passim*

28 U.S.C. § 1406(a) ................................................................................................... *passim*

**State Statutes**

735 ILCS 110/15 (2019) ......................................................................................................14

N.Y. Civ. Rights Law § 76 ..................................................................................................14

N.Y. Civ. Rights Law § 76-a ........................................................................................14, 15

N.Y. Civ. Rights Law § 76-a(1)(a)(2) ................................................................................14

N.Y. Civ. Rights Law § 76-a(1)(d) .....................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(3) ............................................................................................1, 2, 8, 16

Defendant Advance Magazine Publishers Inc. d/b/a The New Yorker ("Advance" or "*The New Yorker*") moves to dismiss the Second Amended Complaint ("SAC") of Plaintiffs Brandon Smietana ("Smietana"), Skycoin Global Limited ("Skycoin"), and Symbolic Analytics Inc. ("SA," and together with Smietana and Skycoin, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or in the alternative, to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## I.       PRELMINARY STATEMENT

In this case, Plaintiffs bring ten causes of action against six named defendants. As to Defendant Advance**,** which publishes *The New Yorker* magazine, Plaintiffs put forward a single defamation claim arising from the August 18, 2021 publication of an article on *The New Yorker*'s website titled *Pumpers, Dumpers, and Shills: the Skycoin Saga*, written by freelance reporter Defendant Morgan Peck (the "Article"). The Article focuses on Smietana's development of the Skycoin cryptocurrency, Skycoin's rise, and the numerous issues that beset Plaintiffs globally.

The SAC sets forth a perplexing puzzle of events, but the greatest puzzle might be the question of why this action has been brought in Illinois. On the face of the SAC, this action has no relevant ties to this District or Illinois. No part of the events giving rise to Plaintiffs' claims arose in this District. Not one Defendant or Plaintiff is alleged to be an Illinois resident and none of the events underlying the SAC are alleged to have occurred here. As to the claim against *The New Yorker*, the Article itself was written in New York and New Jersey, almost entirely edited in New York, and fact-checked in New York, and never even references anything or anyone in Illinois. It was not written, edited, or fact-checked in Illinois. Most of the interviews for the Article were conducted in New York, including an interview of Plaintiff Smietana described in the Article. On their face, the statements at issue in the Article do not relate to any conduct in Illinois. In sum, no substantial events or omissions underlying Plaintiffs' claims occurred in Illinois.

The Court should therefore dismiss this action for improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). Alternatively, if the Court finds venue is proper in this District, it should nevertheless transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a), because the balance of equities and interests of justice weigh heavily in favor of transfer.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiff Skycoin alleges it is a "consortium of related entities involved in the development of software, hardware, design, manufacturing, and services." SAC ¶ 1. It is a Singapore company with its principal place of business in Singapore. *Id.* ¶ 4. Plaintiff SA is a company organized under Delaware laws and is part of Skycoin's "consortium." *Id.* ¶¶ 1, 5. Plaintiff Smietana is the "Chief Software Architect" of Skycoin and SA. *Id.* ¶ 6. He is a United States citizen. *Id.* ¶ 6. The Complaint does not plead Smietana's state of residence.[1] The Article states that Smietana lived in China when the Article was being reported. *See* Declaration of Nimal Eames-Scott ("Eames-Scott Decl."), Ex. A ("Smietana, who by then was living in Shanghai…").

Defendant Advance is the publisher of *The New Yorker* magazine, a national magazine with a particular focus on the cultural life of New York City. SAC ¶ 16; Declaration of Fabio Bertoni ("Bertoni Decl.") ¶ 2 . It is a New York corporation with its principal place of business in New York. SAC ¶ 15; Bertoni Decl. ¶ 4.

---

[1] At one point in 2022, Plaintiff Smietana represented himself in a separate, earlier lawsuit as an Illinois resident. *See Smietana v. Stephens*, No. 22 C 708, 2024 WL 965178, at *8 n.5 (N.D. Ill. Mar. 5, 2024). For purposes of this lawsuit, however, Smietana has not indicated any relationship to Illinois.

### B.      The Article

The Article, which describes events that occurred in New York City, Shanghai, and Las Vegas, makes no mention of Chicago, this District, or Illinois more broadly. *See generally* Eames-Scott Decl., Ex. A. In fact, at the time the Article was researched and drafted, *The New Yorker* was entirely unaware of any connection between Plaintiffs and Illinois. *Id.* ¶ 5. Indeed, Defendant Peck interviewed Plaintiff Smietana *in* New York City and described him as a Shanghai resident during the course of events being reported on. *Id.*; *see also id.* Ex. A. The Article was reported and written in New York and New Jersey. *Id.* ¶ 6. It was edited and fact-checked in New York by *The New Yorker*'s New York-based editor and fact-checker. *Id.* ¶¶ 7, 8. No part of the Article was written, edited, or fact-checked in Illinois. *Id.* ¶¶ 6-8.

On August 18, 2021, the Article was published exclusively online on *The New Yorker*'s website, which is managed from its office in New York. *Id.* ¶ 9.

### C.      The Lawsuit

This is not the first iteration of this action. On February 8, 2022, Plaintiffs filed a similar lawsuit, purportedly arising from many of the same events identified here, including the publication of this Article, against many of the same Defendants. *See Smietana v. Stephens*, No. 22 C 708 (N.D. Ill.), Dkt. No. 1. On August 18, 2022, Plaintiffs amended to add *The New Yorker* as a defendant, although it was never properly served. *Id.* Dkt. No. 44. This Court dismissed that action twice. On May 30, 2023, this Court concluded that Plaintiffs had failed to adequately plead their federal law claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA") against Defendants Stephens and Byerly. *See Smietana v. Stephens*, No. 22 C 708, 2023 WL 3737720, at *1 (N.D. Ill. May 30, 2023). The Court further held that Plaintiffs had failed to allege a Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, claim against Stephens. *Id.*

After Plaintiffs filed a Third Amended Complaint, the Court took up this case again on March 5, 2024. *See Smietana*, 2024 WL 965178, at *4. Once more, it dismissed Plaintiffs' federal RICO and DTSA claims, this time with prejudice, and relinquished supplemental jurisdiction over Plaintiffs' state law claims. *See id.* at *1, *8. Plaintiffs did not move to remand.

Undaunted, Plaintiffs filed this lawsuit in the Circuit Court of Cook County, Illinois Department, Law Division on April 4, 2024. *See* Dkt. No. 1-3. Plaintiffs amended their state court complaint twice, filing the latest and operative Second Amended Complaint on September 9, 2024. *See* Dkt. No. 1-5. On September 18, 2024, Defendant *The New Yorker* removed this action to federal court based on diversity jurisdiction. Dkt. No. 1.

In the SAC, Plaintiffs bring a single claim for defamation against *The New Yorker* based on approximately 21 allegedly libelous statements and implications identified in the Article. *See* SAC ¶¶ 161-171.

## III.    ARGUMENT

### A.    THE NORTHERN DISTRICT OF ILLINOIS IS NOT A PROPER VENUE

This action is not properly venued in this District and must be dismissed. "[W]hether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 55-56 (2013). Venue is only proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State where the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to a claim occurred; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any of the defendants are subject to the court's personal jurisdiction with respect to such action. *See* 28 U.S.C. § 1391(b). While Plaintiffs do not specify their basis for venue, where, as here, *none* of the defendants reside in Illinois, let alone in this District, venue can only be proper if "a substantial part of the events or omissions giving rise to

the claim occurred, or a substantial part of property that is the subject of the action is situated" in this District. *Id.* § 1391(b)(2).[2] Events are considered "substantial" if they are "part of the historical predicate for the instant suit." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015) (citation omitted).

"Once a defendant challenges the plaintiff's choice of venue, the plaintiff bears the burden of establishing that it filed its case in the proper district." *Kulla v. Mayorkas*, No. 24-CV-03847, 2024 WL 4188017, at *2 (N.D. Ill. Sept. 13, 2024). When deciding a 12(b)(3) motion to dismiss, courts do not take as true allegations in the complaint contradicted by defendant's affidavits and can also "consider evidence outside the pleadings to determine whether the chosen venue is appropriate." *Id.*

Plaintiffs have alleged no facts that could carry their burden of establishing that venue is proper in this District because they have alleged no connection between their claims and this venue. *See Tolbert v. Nationstar L.L.C.*, No. 24-CV-9, 2024 WL 4253330, at *2 (S.D. Ill. Sept. 20, 2024) (dismissing complaint for improper venue where no parties resided in the district and no events based in the complaint occurred in the district). Plaintiffs have not alleged that any of the defendants (or even they[3]) reside in this District.[4] Plaintiffs have not alleged that any event or

---

[2] "If there is no district in which an action may otherwise be brought as provided in this section," venue can also be proper if "any defendant is subject to the court's personal jurisdiction" here. 28 U.S.C. § 1391(b)(3). However, this provision does not apply since, as set forth herein, this action could have been brought in New York where "a substantial part of the events or omissions giving rise to the claim occurred."

[3] "When it comes to venue, the plaintiff's residence counts for nothing." *Ford-Reyes v. Progressive Funeral Home*, 418 F. Supp. 3d 286, 290 (N.D. Ill. 2019). Nevertheless, the fact that even Plaintiffs do not reside here only underscores the puzzling nature of their choice to bring their claims in Illinois.

[4] The SAC mentions Illinois only once, in passing, as the location of the company that employed Defendant Catherine Byerly, herself a Florida resident and unrelated to Defendant *The New Yorker*. Byerly's employment by an Illinois-based company cannot establish venue when she resided in Florida, and Plaintiffs plead no facts connecting that company to the alleged misconduct underlying their claims.

omission related to any of their claims occurred here. And Plaintiffs have not even alleged they suffered any reputational harm in the state. This alone mandates dismissal.

In addition, Plaintiffs have not alleged that "a substantial part of the events or omissions giving rise to the claim occurred" in Illinois. 28 U.S.C. § 1391(b)(2). That is because "here, no part of the story took place in Illinois, let alone a substantial part of the story." *Ford-Reyes*, 418 F. Supp. 3d at 290. To the contrary, "a substantial part of the events or omissions giving rise to the claim[s]" in this case occurred in New York—where the Article was largely researched, drafted, edited, and published. *See* Eames-Scott Decl. ¶¶ 6-9. And while Plaintiffs allege other events that occurred in certain places in the world, *e.g.*, Nevada and China, SAC ¶¶ 40, 72, 73, in relation to their other claims, the SAC *never* mentions Illinois as a situs of those events. This lack of substantial—or indeed, *any*—connection between Plaintiffs' claims and this venue mandates dismissal.

In this utter lack of connection, this case resembles *Carrington v. Israel Emergency Alliance*, No. 21 C 3713, 2022 WL 1062337, at *2 (N.D. Ill. Apr. 8, 2022). In that defamation action, the Court granted defendant's motion to dismiss for improper venue, concluding that the out-of-state plaintiff had failed to connect her claims to Illinois, pleading no facts about losing business in Illinois,[5] or supporting with evidence the contention that she suffered reputational damage in the state. *Id.* Nor was it enough that defendant had a satellite office in Illinois since defendant had presented an affidavit stating that no one in the Illinois office was responsible for the social media postings at issue. *Id.* As the Court noted in dismissing for improper venue, "the complaint makes no mention of Illinois at all." *Id.* Here, too, the SAC never pleads that any of the

---

[5] Even lost business allegations would not suffice. "[A] plaintiff's economic harm suffered in a forum is not sufficient for a finding of proper venue under Section 1391(b)(2)." *Clark v. McDonald's Corp.*, No. 3:22-CV-00628-NJR, 2023 WL 2648467, at *3 (S.D. Ill. Mar. 27, 2023).

Defendants are Illinois residents or describes any events, including purported reputational damage, that are alleged to have occurred in Illinois.[6] *See generally* SAC. Illinois cannot be the proper venue for this action.

Additionally, the interests of justice support dismissal—as opposed to transfer—under § 1406(a). "As written, the statute directs that dismissing the case serves as the default option for the Court." *Khan v. Hemosphere, Inc.*, No. 18 C 05368, 2019 WL 10947304, at *1 (N.D. Ill. Jan. 23, 2019) ("Given that the case is essentially in its infancy with no discovery underway, dismissal without prejudice is the appropriate resolution here rather than determining appropriate venue."). *Id.* at 2. Moreover, on the SAC's face, which again describes no material event occurring in this District, it was foreseeable to Plaintiffs that Illinois is not a proper venue for this action, further supporting the interests of justice do not favor transfer under Section 1406(a). *See Shapiro v. Schiller*, No. 02-1275 RLP/LFG, 2003 WL 24335791, at *2 (D.N.M. Mar. 3, 2003) (interest of justice supports dismissal as opposed to transfer of libel action "at the time of filing it was obvious that venue was improper in this forum."). Courts throughout the country have dismissed libel actions for similar reasons. *See, e.g.*, *Carrington.*, 2022 WL 1062337, at *2; *see also Shapiro*, 2003 WL 24335791, at *1 ("[I]t is undisputed that no defendant resides in New Mexico and that *no* events giving rise to this action took place in New Mexico. Accordingly, venue in New Mexico is improper whether or not this court has personal jurisdiction over the parties."); *Nunes v. Cable News Network, Inc.*, No. 8:22-CV-2659-SCB-AEP, 2023 WL 2468646, at *6 (M.D. Fla. Mar. 1, 2023) (granting motion to dismiss for improper venue where defendants were Washington, D.C.

---

[6] Plaintiffs never plead that anyone in Illinois read the Article, but even if they had, "bare allegations that defendant made a defamatory statement…within this State does not fulfill its burden of proving that a substantial part of the events giving rise to this suit took place in this district." *Gencor Pac., Inc. v. Fed. Lab'ys Corp.*, No. 07 C 168, 2007 WL 2298367, at *2 (N.D. Ill. Aug. 3, 2007).

residents and "did nothing relevant to this action in Florida"), *appeal dismissed*, No. 23-11038-D, 2023 WL 4248936 (11th Cir. May 22, 2023).

Because Defendants are not Illinois residents and because *no* part of the events or omissions giving rise to this action occurred here (let alone a *substantial* part), this case should be dismissed for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a).

### B. IN THE ALTERNATIVE, TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK IS WARRANTED.

Even if venue were proper in this District (which it is not), this Court should transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Atl. Marine Constr.*, 571 U.S. at 59. "A transfer under § 1404(a) is appropriate (1) venue is proper in the proposed transferee district, (2) the transferee district is more convenient for the parties and witnesses, and (3) transfer would serve the interests of justice." *Qualtex Corp. v. ATM Grp. Corp.*, No. 13 C 08914, 2014 WL 3495602, at *2 (N.D. Ill. July 14, 2014).

The Southern District of New York meets these requirements.[7] Venue is proper in the Southern District of New York, because, as explained above, "a substantial part of the events or omissions giving rise to this action occurred here." *See* Eames-Scott Decl. ¶¶ 5-9. The remaining two factors are also satisfied since the Southern District of New York is as or more convenient to

---

[7] From the face of the SAC, it is unclear whether Defendants Catherine Byerly (Florida) and Aaron Kunstman (Wisconsin), who have not yet been served in this action, and Joel Cuthriell (Oklahoma), who has, are subject to personal jurisdiction in the Southern District of New York. While that may be a hindrance in other contexts, here it is not because nothing in the SAC suggests they are subject to personal jurisdiction in Illinois either. In fact, that they are potentially not subject to personal jurisdiction here in Illinois or in New York favors dismissal. *See Khan*, 2019 WL 10947304, at *1.

the parties and the witnesses, many of whom are located in New York, and transfer to New York will serve the interests of justice because New York courts have a particular interest in resolving defamation claims against New York publishers like Defendant *The New Yorker*.

### 1. New York Is More Convenient for the Parties and Witnesses

To evaluate convenience, courts in this District weigh five factors: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 22 C 1422, 2023 WL 4106067, at \*14 (N.D. Ill. June 21, 2023) (quoting *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017)). Evaluated in sum, these factors favor transfer of this action to the Southern District of New York.

### a. Plaintiffs' Choice of Forum Should Be Discounted

*First*, Plaintiffs' choice of forum merits no deference because they have failed to plead a single fact showing a "reasonable relationship to the cause of action" with the Northern District of Illinois or that Illinois is even their home forum. *Joint Ukrainian-Spanish Venture Inus v. United Indus. Int'l, Inc.*, No. 94 C 693, 1994 WL 571662, at \*2 (N.D. Ill. Oct. 14, 1994); *Shepherd v. Am. Numismatic Ass'n*, No. 13 C 8, 2013 WL 5798963, at \*3 (N.D. Ill. Oct. 28, 2013) (where plaintiffs' chosen forum is not their home forum, that choice is entitled to minimal deference).

Further, the plaintiff's choice of forum affords even less deference when, as here, "another forum has a stronger relationship to the dispute." *Jaramillo v. DinEquity Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (citation omitted); *accord Jasper v. Danone N. Am. Pub. Benefit Corp.*, No. 22 C 7122, 2023 WL 4492354, at \*2 (N.D. Ill. July 12, 2023). In *Jasper*, the court discounted the plaintiff's choice of forum because plaintiff's consumer fraud claims had almost no connection to Illinois, whereas the transferee forum was where most of the defendant's relevant decisions took

place and where defendant was headquartered. *Jasper*, 2023 WL 4492354, at *2. Here, too, Plaintiffs have pleaded no connection to Illinois, while *The New Yorker* is incorporated and has its principal place of business in New York, which is largely where the Article was researched and written, edited, fact-checked, and published. *See* Eames-Scott Decl. ¶¶ 5-9. Plaintiffs' seemingly random choice of Illinois is entitled no deference.

### b. Plaintiffs Have Not Pleaded that Illinois is the Situs of Material Events

*Second*, Plaintiffs have not pleaded that the situs of material events is in this District or in Illinois. To the contrary, the material events alleged in the SAC occurred in New York, Nevada or abroad. As to *The New Yorker* specifically, the reporting, researching, writing, editing, fact-checking, and publication of the Article were done focused in New York, Eames-Scott Decl. ¶¶ 5-9, meaning that *New York* is the "situs" of the defamation claim. *See Powell v. Sparrow Hosp.*, No. 09 C 3239, 2010 WL 582667, at *3 (N.D. Ill. Feb. 12, 2010) ("situs" of events was Michigan, where defendants had allegedly "conveyed false, negative information about the plaintiff"); *Biomet, Inc. v. Stryker Howmedica Osteonics Corp.*, No. 03 C 6491, 2004 WL 769358, at *5 (N.D. Ill. Apr. 9, 2004) (false information was drafted and distributed in New Jersey, making it the situs and supporting transfer). In this way, this case is like *Santa's Best Craft, LLC v. Janning*. There, the Court decided to transfer a defamation action because defendants were located in transferee district, the allegedly defamatory statements were written there, and the website on which the statements were published, was centered and maintained there. No. 02 C 9529, 2003 WL 21504522, at *3 (N.D. Ill. June 30, 2003). So, too, here: the Article was largely written, edited, and fact-checked in New York (and not at all in Illinois); *The New Yorker* is incorporated in New York and has its principal place of business in New York; and its website, where the Article was published, is centered in New York. *See* Bertoni Decl. ¶ 4; Eames-Scott Decl. ¶ 9. To the extent

that a plaintiff's residence is even part of the situs analysis for a defamation claim, *see Powell*, 2010 WL 582667, at \*3, Smietana is silent on his residence and Skycoin Global and Symbolic Analytics pleaded only Singapore and Delaware domiciles, respectively. SAC ¶¶ 4, 5. These allegations plead no situs in Illinois. This factor strongly favors transfer to New York.

### c.      Proof Can Be Easily Accessed in New York

*Third*, proof as to the Plaintiffs' claims against *The New Yorker* is easily accessed in New York. Key to this inquiry is where "documents and decision making employees of the [d]efendants are located." *Jaramillo,* 664 F. Supp. 2d at 914. All of *The New Yorker*'s evidence is located in New York. Bertoni Decl. ¶ 5. Additionally, Defendants Peck and Stephens are pleaded to be New York citizens, SAC ¶¶ 7, 14, indicating that their evidence too would be in New York. Regardless of where the other parties store their evidence (and given that none are pleaded to reside in Illinois, it is likely not Illinois), "[w]ith the advent of electronic discovery, where records are actually stored is less of a factor because documents now are easily scanned, stored, and electronically transmitted and moving them no longer creates the onerous burden it may once have imposed." *Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 WL 56638, at \*2 (N.D. Ill. Jan. 4, 2017) (citation omitted). Accordingly, this factor either tips towards New York or is neutral.

### d.      New York Is More Convenient for *The New Yorker*'s Witnesses

*Fourth*, New York is the most convenient forum. "The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Yi v. Uber Techs., Inc.*, No. 18 C 355, 2018 WL 5013568, at \*3 (N.D. Ill. Oct. 15, 2018) (citation omitted). Initially, nothing in the SAC suggests that any potential nonparty (or even party) witnesses are in Illinois, further supporting transfer. *See Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 737 (N.D. Ill. 2007) (finding transfer more convenient for witnesses when plaintiffs "identified no witnesses who reside in this district"). And as to *The New Yorker*, the witnesses relating to its liability, who are of

11

"primary importance" in this analysis, are all located in New York. *Faxel v. Wilderness Hotel & Resort, Inc.*, No. 19 C 4649, 2019 WL 6467317, at *6 (N.D. Ill. Dec. 2, 2019). The Southern District of New York, therefore, is the most convenient for them. Bertoni Decl. ¶ 5.

###### e. Litigating in New York is More Convenient for Most of the Parties

*Fifth*, New York, on balance, is more convenient for the parties. "In considering the convenience of the parties, we weigh 'the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Faraj v. Duvick*, No. 1:20-cv-4488, 2021 WL 1315631, at *3 (N.D. Ill. Apr. 8, 2021) (citation omitted); *see also Villalobos v. Iowa Chi. & E. R.R. Corp.*, No. 09 C 2342, 2009 WL 10713600, at *2 (N.D. Ill. Aug. 3, 2009) (case transferred to other division within district where none of the parties had any significant connection to Eastern Division). Litigating in New York is more convenient for Defendant *The New Yorker* as it is its principal place of business and *The New Yorker* employees who are likely to be deposed are also New York residents. Bertoni Decl. ¶ 5. Defendants Peck and Stephens are also New York residents, SAC ¶¶ 7, 14, and Delaware, Plaintiff SA's state of incorporation, SAC ¶ 5, is closer to New York than Illinois. While New York is slightly less favorable for Defendant Kunstman, a Wisconsin resident, and Defendant Cuthriell, an Oklahoma resident, it is neutral as to Plaintiff Skycoin (Singapore) and Defendant Byerly (Florida), with flights between their locations and New York or Chicago roughly of equal time and convenience. Because none of the parties have any relationship to Illinois and because New York is overall more convenient for more parties, this factor favors transfer.

### 2. Transfer to New York Would Serve the Interests of Justice

*Finally*, because the interests of justice support transfer, this alone recommends that this case be transferred to the Southern District of New York. "The interest of justice inquiry focuses

on the efficient administration of the court system, rather than the private considerations of the litigants." *Shepherd*, 2013 WL 5798963, at *4. In evaluating the interests of justice, a court will consider "docket congestion and likely speed to trial" in each forum, "each court's relative familiarity with the relevant law," "the respective desirability of resolving controversies in each locale," and "the relationship of each community to the controversy." *Kapoor v. Nat'l Rifle Ass'n of Am.*, 343 F. Supp. 3d 745, 750 (N.D. Ill. 2018) (quoting *Research Automation, Inc. v. Schrader-Bridgeport, Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010)). "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Shepherd*, 2013 WL 5798963, at *4. Here, the interest of justice weighs heavily in favor of the Southern District of New York, recommending transfer.

**Docket Congestion.** Docket congestion and speed to trial support transfer to the Southern District of New York. In assessing this factor, even a "small statistical difference" between two districts can weigh in favor of transfer. *Illinois Computer Rsch., LLC v. Harpercollins Publishers, Inc.*, No. 10 C 5021, 2010 WL 4877501, at *6 (N.D. Ill. Nov. 22, 2010) (finding the time to trial weighed in favor of transfer from this District to Southern District of New York). As of March 31, 2024, there were 11,384 cases filed, 12,139 pending in the Southern District of New York,[8] and the average run from filing to trial is 43.3 months. The numbers in the Northern District of Illinois are significantly higher. As of the same time period, there were 18,072 cases filed, 19,356 cases pending, and the average time between filing to trial is 55.4 months—or a whole additional year.[9] These differences support transfer to the Southern District of New York.

---

[8] *Table C-1—U.S. District Courts–Civil Federal Judicial Caseload Statistics*, UNITED STATES COURTS (Mar. 31, 2024), *available at* https://www.uscourts.gov/file/78649/download.

[9] *Table T-3—U.S. District Courts–Trials Federal Judicial Caseload Statistics,* UNITED STATES COURTS (Mar. 31, 2024), *available at* https://www.uscourts.gov/file/78729/download.

**New York's Familiarity with the Law.** The choice-of-law factor favors the Southern District of New York. A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). If there is a transfer of venue under Section 1404(a), the transferee court applies the choice-of-law rules that "would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see also Jaurequi v. John Deere Co.*, 986 F.2d 170, 172 (7th Cir. 1993). Illinois choice-of-law rules use the "most significant relationship" test. *See Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 722 (N.D. Ill. 2014). Here, New York, where the Article was published, has the "most significant interest" in this litigation—not Illinois, since Plaintiffs are not even domiciled here and they have pleaded no connection between this State and their defamation claim.[10] Moreover, a conflict exists between the much narrower Illinois Anti-SLAPP law, which would *not* apply here, 735 ILCS 110/15 (2019), and the much broader New York Anti-SLAPP law which *would*, N.Y. Civ. Rights Law § 76-a.[11] Where two states' Anti-SLAPP laws differ, "the Court must determine which state's statute applies." *Underground Sols.*, 41 F. Supp. 3d at 724

---

[10] In a defamation action, "a plaintiff's home state often" (but not always) "has the 'most significant relationship' because that location is where the plaintiff suffers the most reputational harm." *Bd. of Forensic Doc. Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019). However, the only "home state" pled by any plaintiff is Delaware for SA—but SA is never even mentioned in the Article. Because Smietana has not pled a home state and because Skycoin is a Singapore company, the only *state* that could have a significant interest in the outcome of this defamation claim is the state where *The New Yorker* is incorporated and has its principal place of business: New York.

[11] The Illinois Anti-SLAPP law narrowly immunizes from civil liability "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government . . . regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 Ill. Comp. Stat. Ann. 110/15 (2019). By contrast, New York's Anti-SLAPP Law applies to any claim arising from "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a)(2). Section 76 *mandates* that the term "public interest" "shall be construed broadly, and shall mean any subject other than a purely private matter." *Id.* § 76-a(1)(d). Here, the Article's reporting on the financial and cryptocurrency industries fall easily within those parameters. *See Zeitlin v. Cohan*, 197 N.Y.S.3d 211, 212 (2023) (article about business executive's resignation as CEO served the public interest), *leave to appeal denied*, 42 N.Y.3d 905 (2024).

(citation omitted). The publisher/speaker's domicile and location of publication is a "critical factor in determining choice of law in a case involving the urged application of an anti-SLAPP statute." *Id.* Here, since the answer to both of those locations is New York, New York defamation law, including its Anti-SLAPP law applies. *Id.* And because New York is most familiar with its Anti-SLAPP law, this factor favors transfer.

**Desirability and Community Relationship to Controversy.** This case has no connection to this District's community – no party is pleaded to be an Illinois resident, and no events are pleaded to have occurred here. Illinois, therefore, has *no* interest or relationship to this action. By contrast, New York has a special interest in adjudicating this defamation case against a quintessential New York publisher. "New York, as the national center of the publishing industry, has a significant interest in assuring that the risks and liabilities flowing from publishing . . . will be uniform[ly applied]." *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1092 (S.D.N.Y. 1984). New York and its community have a stronger connection to the media industry and *The New Yorker* in particular, and the impact that defamation litigation will have on its local media industry, weigh in favor of transfer. *See Am. Booksellers Ass'n v. Houghton Mifflin Co.*, No. CIV.A. 94-3311, 1994 WL 570172, at *2 (E.D. Pa. Oct. 18, 1994) (noting that the relationship between the community and the occurrence was stronger in New York because "New York is the center of the publishing world and the defendants are publishing companies.").

Courts regularly transfer defamation cases where, as here, the convenience of the parties and witnesses and the interests of justice support transfer. *See, e.g.*, *Powell*, 2010 WL 582667, at *3; *Santa's Best Craft*, 2003 WL 21504522, at *3; *Sterling Novelty, Inc. v. Smith*, 700 F. Supp. 408, 410 (N.D. Ill. 1988); *see also Montgomery v. Risen*, No. 15-20782-CIV, 2016 WL 4119865, at *2 (S.D. Fla. Jan. 26, 2016). This case should follow suit.

15

Because the interests of justice strongly support transfer, this alone is sufficient is to grant transfer to the Southern District of New York

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Advance Magazine Publishers Inc. d/b/a *The New Yorker* respectfully requests that this Court dismiss the Second Amended Complaint with prejudice pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a), or in the alternative, transfer this action to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a), and that this Court grant such additional relief as it deems just and proper.

Dated: October 21, 2024

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/ Kate Bolger*
Kate Bolger
Nimra H. Azmi (*pro hac vice* forthcoming)
1251 Avenue of the Americas, Floor 21
New York, NY 10020
Phone: (212) 489-8230
katebolger@dwt.com
nimraazmi@dwt.com

Conor McDonough
300 North LaSalle Street, Suite 2200
Chicago, IL 60654
Phone: (312) 820-5460
conormcdonough@dwt.com

*Attorneys for Defendant Advance Magazine Publishers Inc. d/b/a The New Yorker*